**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |  |
|---|---|---|
| 10TALES, INC., | § | |
| | § | |
| | § | |
| Plaintiff, | § | Case No. 6:20-cv-00810-ADA |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| TIKTOK INC., TIKTOK PTE. LTD., | § | |
| BYTEDANCE LTD., and BYTEDANCE | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

**<u>PLAINTIFF 10TALES, INC.'S REPLY CLAIM CONSTRUCTION BRIEF</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    Introduction................................................................................................................ 1

II.   TikTok Fails to Carry its Burden of Proving that Claim 1 is Indefinite................................ 1

III.  TikTok Fails to Carry its Burden to Show that 10Tales Clearly and Unmistakably
      Disclaimed Claim Scope During Prosecution ........................................................ 5

IV.   The Court Should Adopt 10Tales' Proposed Constructions Based on the Plain and
      Ordinary Meaning of the Claim Terms ................................................................ 8

      1.   "server"........................................................................................................ 8

      2.   "the system comprising … a computer-readable storage medium … wherein
           the computer-readable storage medium contains one or more programming
           instructions for performing a method … the method comprising" ...................... 9

      3.   "creating … a … composite digital media display"........................................ 9

      4.   "presenting to the user via a [/the] display server" ...................................... 10

      5.   "user social network information" ................................................................ 11

      6.   "retrieving user social network information from at least one source external
           to the presented first composite digital media display …" ......................... 12

      7.   "monitoring the first composite digital media display for the presence of a
           trigger"........................................................................................................ 13

      8.   "performing rule based substitution of one or more of the digital media assets
           from the first set of digital media assets with one or more of the digital media
           assets from the second set of digital media assets"..................................... 13

      9.   "second composite digital media display" ................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*BASF Corp. v. Johnson Matthey Inc.*,
   875 F.3d 1360 (Fed. Cir. 2017).......................................................................................1

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
   631 F.3d 1279 (Fed.Cir.2011)..........................................................................................3

*MIT v. Shire Pharm., Inc.*,
   839 F.3d 1111 (Fed. Cir. 2016).............................................................................. *passim*

*Metaswitch Networks Ltd. v. Genband US LLC*,
   2016 WL 866715 (E.D. Tex. Mar. 5, 2016) ....................................................................2

*Paid Search Engine Tools, LLC v. Yahoo! Inc.*,
   2010 WL 1904545 (E.D. Tex. May 10, 2010).................................................................10

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc).......................................................................2

*Rembrandt Data Techs., LP v. AOL, LLC*,
   641 F.3d 1331 (Fed. Cir. 2011)........................................................................................3

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
   574 U.S. 318 (2015).........................................................................................................2

## I.       Introduction

Claim 1 of the '030 patent is straightforward and would have easily been understood by those skilled in the art at the time of the invention as being directed to a system running software on a server.  *See generally* Exh. 5, Decl. of Aviel D. Rubin, Ph.D. ("Rubin").  Rather than focusing on the plain language recited in claim 1, TikTok overreaches in an attempt to have each limitation of the claim found to be indefinite.  TikTok's strategy is belied by the fact that it understood the claim language well enough to challenge the claims of the '030 patent in a petition for *Inter Partes* Review ("IPR"), where it only proposed construction of a single term—"user attributes."  *See* Exh. 6, TikTok IPR Petition, pp. 9-10.  10Tales disagreed with TikTok's IPR construction of "user attributes," so it proposed it for construction here.  Departing from its IPR position, TikTok agreed with 10Tales that "user attributes" needs no construction, and should be afforded its plain and ordinary meaning.  Contrary to its broad IPR claim constructions, TikTok seeks to narrow the claims to secure otherwise unavailable non-infringement arguments.

TikTok's strategy is transparent.  Because TikTok's "For You" Feed practices the plain and ordinary language recited in claim 1, it is left to feign inability to understand the claim language, or alternatively, asks the Court to improperly narrow it.  The Court should reject TikTok's arguments and issue an order construing claim 1 according to its plain and ordinary meaning as proposed by 10Tales.

## II.      TikTok Fails to Carry its Burden of Proving that Claim 1 is Indefinite

In its brief, TikTok seeks to avoid its evidentiary burden and have this Court rule that 6 of the 9 disputed claim terms of the '030 patent are indefinite.  But TikTok bears the burden of proving indefiniteness by clear and convincing evidence, and it fails to do so.  *See BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).  The Court should disregard TikTok's

indefiniteness arguments, and only consider—and ultimately reject—TikTok's "alternative" proposed claim constructions.

The only extrinsic evidence that TikTok proffers to support its "indefiniteness" arguments is the declaration of Dr. Alan Bovik ("Bovik"), which consists entirely of legal arguments and legal conclusions. Notably, Dr. Bovik offers no explanation of how one skilled in the art would have understood any of the terms of art used in the patent, nor does he explain the state of the art at the time of the invention in 2003.[1] *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332 (2015) ("'[e]xperts may be examined to explain terms of art, and the state of the art, at any given time,' but they cannot be used to prove 'the proper or legal construction of any instrument of writing'"). This Court should give no weight to Dr. Bovik's legal opinions, and TikTok has failed to proffer clear and convincing evidence that the claim terms at issue are indefinite. *Cf. Metaswitch Networks Ltd. v. Genband US LLC*, 2016 WL 866715, at *1 (E.D. Tex. Mar. 5, 2016) ("The Court is responsible for deciding disputed questions of law, and the Federal Circuit has consistently disfavored reliance on expert testimony as the basis for legal conclusions.").

TikTok argues that claim 1 of the '030 patent is indefinite because it does not require that the server and the computer readable storage medium ("CRSM") be "coupled together." Dkt. No. 73 ("TT Br.") at 7. TikTok's argument disregards the requirement that the "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). The language of claim 1 requires "a server" and "a computer-readable storage medium operably

---

[1] Dr. Bovik's declaration includes a "technical background of the '030 patent" section, but it does nothing more than paraphrase the "Background of the Invention" of the '030 patent. Dr. Bovik does not explain any technological terms used in the '030 patent background or the state of the art.

connected."  Even TikTok's expert admits that a person of ordinary skill in the art ("POSITA") would have understood that the claimed system requires the server and the CRSM to be coupled to one another.  *See* Dkt. No. 73-9 ("Bovik"), ¶ 78 ("The specification supports that the CRSM that includes programming instructions is operably connected to the server."); *see also* Rubin, ¶¶ 24, 87.  Similarly, a POSITA would have understood that a server operably connected to a CRSM—as opposed to a "client" such as a user device—is capable of executing programming instructions stored on the CRSM coupled thereto.  *See* Rubin, ¶¶ 24, 87, 92; Bovik, ¶¶ 78-79.

Given that the plain and ordinary language of claim 1 of the '030 patent requires a server and a CRSM operably connected to that server, and programming instructions stored on that CRSM, a POSITA would have understood how to "make" the claimed system.  The system would be made by loading the programming instructions onto a CRSM that is operably connected to a computer that is capable of operating as a server in the well-known client-server model—a model that was well-known at the time and commonly used in Internet-based applications, including video streaming services.  *See* Rubin, ¶¶ 38-46.  Contrary to TikTok's argument, the programming instructions need not be executed in order to "make" the claimed system.  *See id.*, ¶ 24.  Similarly, as a matter of law, one would "use" the claimed system by causing the server to execute the claimed programming instructions stored on the CRSM.  *See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).[2]  The plain and ordinary language of claim 1— as confirmed by both TikTok's and 10Tales' experts—recites a "system," and would not have been

---

[2]  TikTok's reliance on *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011) is misplaced because the Federal Circuit found that the claim recited both structural limitations and a method step.  *Id.* at 1339-40.  In contrast, claim 1 of the '030 patent does not include a limitation that requires the system to actually perform any method steps.  Rather, the programming instructions stored on a CRSM, if executed, will cause a server to perform a method.  The experts agree that this is how a POSITA would have understood claim 1 here.  *See* Bovik, ¶¶ 78-79; Rubin, ¶¶ 24, 87.

understood to be a hybrid system/method claim. TikTok's *IPXL* indefiniteness argument fails as a matter of law.

TikTok also argues that claim 1 is indefinite because it recites a "first" composite digital media display ("CDMD"), a "user-specific" CDMD, and a "second" CDMD. TikTok argues that a POSITA would not have known whether the modifier "second" refers to the "first" CDMD or the "user-specific" CDMD. TikTok's argument is specious at best. Both experts agree that a POSITA would have had at least a bachelor's degree in computer science, electrical engineering, or a related field. TikTok presents no basis to conclude that such a POSITA would not readily understand that the modifier "second" does not refer back to the "first" CDMD, but instead, refers to the "user-specific" CDMD. Moreover, a POSITA would have understood that the claimed system would not function as described in the specification if the system were to continue transmitting the "first" CDMD rather than the modified, "user-specific" CDMD to the user device for display. Rubin, ¶ 103. Accordingly, TikTok has failed to show by clear and convincing evidence that a POSITA would not have understood with reasonable certainty that in the context of claim 1 as a whole, the "second" CDMD refers to the "user-specific" CDMD.

Finally, TikTok argues that claim 1 is indefinite because the preamble describes the system as one for associating user attributes with digital media asset attributes, but does not recite an "actual step" for making this association. But TikTok overlooks the two claim limitations that it did not propose as requiring construction. First, claim 1 requires that the programming instructions, when executed, cause the server to "identify[] a first set of digital media assets," and to "select[], based on the user attributes in the social network information, a second set of digital media assets." TikTok did not seek construction of either of these claim limitations. Indeed, no construction is necessary, because it is clear that these instructions cause the system to associate

user attributes with digital media assets in at least selecting the second set of digital media assets.[3]

Accordingly, TikTok has failed to carry its burden of proving that claim 1 is indefinite.

## III.    TikTok Fails to Carry its Burden to Show that 10Tales Clearly and Unmistakably Disclaimed Claim Scope During Prosecution

As explained in 10Tales' opening brief, TikTok seeks to read limitations from certain embodiments described in the specification into the disputed claim terms, which are simply not there.  To justify its narrowing constructions, TikTok relies almost entirely on arguments that 10Tales "disavowed" the full scope of claim 1 during prosecution of the patent.  Thus, TikTok at least implicitly concedes that absent a clear and unmistakable disavowal by 10Tales, TikTok's narrowing of the plain and ordinary construction of the disputed claim terms would be improper.  TikTok, however, fails to meet its burden, and as such, this Court should reject TikTok's proposed constructions that rely upon the alleged "disavowal" of the full scope of claim 1 of the '030 patent.

"The party seeking to invoke prosecution history disclaimer bears the burden of proving the existence of a 'clear and unmistakable' disclaimer that would have been evident to one skilled in the art."  *MIT v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016) (citation omitted).  Indeed, the Federal Circuit has declined to find a prosecution disclaimer "[w]here the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations.'"  *Id.*

First, TikTok claims that 10Tales narrowed the scope of claim 1 to a system capable of performing a rule-based substitution without "destroying the flow of the narrative content"— language that appears nowhere in claim 1—based on a response made by the prosecuting attorney that the prior art referenced by the examiner—Srinivisan—did not teach "the creation of the second set of digital media assets through rule based substitution."  The prosecuting attorney argued that

---

[3]  Bovik acknowledges that the specification discloses a rule for associating user attributes with digital media attributes.  Bovik, ¶ 143; *see also* '030 patent, 7:56-67; 15:10-34; Rubin, ¶¶ 83-86.

Srinivisan taught a different type of system that associates user attributes with user-specific digital media assets (advertisements in Srinivisan).  Specifically, Srinivisan disclosed a system where at "appropriate times during the broadcast," the system would stop the main video stream and start broadcasting the appropriate ad stream; when the ad stream completed, the system would resume transmission of the main video stream from the point where it had stopped.  Rubin, ¶¶ 106-112 (citing Srinivisan at 32:57-65).  The prosecuting attorney argued Srinivasan was different from the claimed system because the claimed substitution required *altering* a stream rather than stopping a first stream to present a second stream at a branch point, then returning to the first stream. Regardless, the examiner disagreed, and found that Srinivasan's multiple stream system was covered by the claimed "rule-based substitution" limitation.  Accordingly, TikTok has failed to identify a clear and unmistakable statement made by 10Tales during prosecution where it intentionally limited the claimed system to a system where the rule-based substitution is limited to actions that preserve the flow of a story plotline.  TikTok's disclaimer argument should be rejected.

Second, TikTok argues that 10Tales disclaimed "using user attributes stored in user profiles to select videos."  Here, TikTok refers to a statement during prosecution that "Srinivasan does not utilize social network information obtained from a source external to the presentation (e.g. video display of Srinivasan)."  It is unclear how TikTok could possibly construe this statement as an intentional disclaimer of anything.  But TikTok argues that because Srinivasan discloses the use of "stored user profiles," 10Tales was somehow disclaiming "stored user profiles" altogether, based on the statement that in the claimed system, the social network information is retrieved from a source other than the displayed presentation itself.  The examiner only cited Srinivisan for its disclosure of generating user content based on user responses, not that Srinivisan taught retrieving "stored user profiles;" TikTok has failed to show that this statement was a clear and unmistakable

disclaimer of any use of stored user profiles.  Indeed, not even the examiner viewed the prosecuting attorney's statement as a disclaimer.  In allowing the claim, the examiner stated, "Srinivasan *et al.* gets user attribute information by asking the users."  Notably, the examiner did not state that Srinivisan gets user attribute information from a stored user profile.

Finally, TikTok argues that 10Tales limited claim 1 to require that the recited "trigger" be confined to data embedded into the first composite digital media display (i.e., a "trigger *point*"). TikTok's argument is based on statements made with regard to an unrelated method claim that 10Tales cancelled before submitting the claim that issued as claim 1.  Significantly, the subject claim at that time during prosecution specifically required storing the "trigger" along with a digital media asset on the server-side CRSM.  *See* Exh. 3, 10Tales0387 ("storing a personalized digital media asset … comprising … the digital media asset, the trigger, and the personalized content"). There is no such limitation in claim 1 of the '030 patent.  Moreover, the claim at the time did not require the "trigger" to be a data point embedded into a digital media asset, let alone into a composite digital media display.  So here too, TikTok fails to show a clear and unmistakable disclaimer that would have been evident to one skilled in the art that 10Tales intentionally limited its claim to require that the composite digital media display includes an embedded trigger point.

In support of its "disavowal" arguments, TikTok submitted the Bovik declaration, which includes nothing more than conclusory attorney argument trying to make out a disclaimer case. This is an improper use of an expert declaration, and the Court should give the declaration no weight here.  Had 10Tales made a clear and unmistakable disclaimer, TikTok could have simply cited the statement in its brief.  But 10Tales made no such disclaimer.  Indeed, claim 1 was introduced late in the prosecution of the '030 patent, and the examiner allowed the claim finding that the closest prior art did not teach the subject matter recited therein.

Even if the Court were to give weight to the Bovik declaration, which it should not, 10Tales' interpretation of the prosecution history is more reasonable.  *See* Rubin, ¶¶ 104-124. Moreover, in support of its IPR petition, TikTok submitted a declaration from a different expert— Kevin Almeroth—and tellingly, Dr. Almeroth did not interpret the prosecution history as TikTok asks the Court to do here.  *See* Exh. 7, Almeroth IPR Decl.  Specifically, TikTok's IPR expert did not opine that 10Tales had disclaimed the scope of the patent such that claim 1 was intentionally limited to only narrative content, that the claimed system required embedding a "trigger point" in the composite media display, that the rule-based substitution had to occur without "destroying the flow of the narrative," or that the social network information could not be stored in a user profile database.  *See* Rubin, ¶¶ 114, 119.  Had TikTok's IPR expert interpreted the prosecution history as TikTok proposes the Court do here, he likely would not have been able to identify these additional limitations in the prior art.  Because TikTok proposed a different interpretation of the prosecution history in the IPR proceeding—and given 10Tales' reasonable interpretation here— this Court should decline to find prosecution disclaimer.  *See MIT*, 839 F.3d at 1119.

## IV.   The Court Should Adopt 10Tales' Proposed Constructions Based on the Plain and Ordinary Meaning of the Claim Terms

### 1.      "server"

Ordinarily, the term "server" is one that 10Tales would agree should be given its plain and ordinary meaning.  The problem here, however, is that TikTok is trying to claim that the "plain and ordinary meaning" somehow renders the claim indefinite.  First, TikTok argues that the "server" has no function and is not coupled to any other structure in the claimed system.  This is an unreasonable interpretation, and as TikTok's own expert admits, a POSITA would interpret the claim as requiring that the CRSM is coupled to the server.  Were TikTok to drop these arguments, the Court would not need construe this well-understood term for the jury.

Also, the parties agree that the server can be either "a **computer or program** that responds to commands from a client."  *See* Exh. H, TikTok Resp.  The parties also agree that the term "server" in the first limitation of the claim refers to a **computer** that contains software allowing the computer to respond to commands from a client.  This is distinguishable from the term "display server" used later in the claim, which refers to a **program** rather than a physical computer.  In light of the foregoing, 10Tales agrees that the term "server" does not need to be construed, but instead, can be afforded its plain and ordinary meaning.

2.   **"the system comprising … a computer-readable storage medium … wherein the computer-readable storage medium contains one or more programming instructions for performing a method … the method comprising"**

TikTok has not carried its burden to prove indefiniteness.  10Tales incorporates the arguments set forth *supra* in § II.  The parties otherwise agree that the claimed system comprises at least one server (computers or programs connected to a network and programmed to respond to commands from a client), and one or more CRSMs that are operably connected to the one or more servers, wherein one or more of the CRSMs contain programming instructions that the servers are configured to execute to provide digital media content to a user that is customized to that particular user.  The Court should adopt the plain and ordinary meaning.

3.   **"creating … a … composite digital media display"**

10Tales' and TikTok's experts agree that this limitation refers to a step carried out by software running on a server that is part of the claimed system.  The dispute here is that TikTok is seeking to add limitations to this claim term based on its argument that 10Tales disavowed claim scope during prosecution.  As explained above, however, TikTok fails to meet its burden to show that the patentee clearly and unmistakably disclaimed any claim scope.  10Tales incorporates the arguments set forth *supra* in § III.  Moreover, TikTok's proposed construction is inconsistent with its IPR petition, in which it did not seek construction of this term.  *See* Rubin, ¶¶ 114.  That TikTok

9

itself has interpreted the prosecution history differently in two proceedings shows that there has been no clear and unmistakable disclaimer. *MIT*, 839 F.3d at 1119.

Accordingly, if the Court agrees that this limitation refers to a step carried out by software executing on a server, this term should be given its plain and ordinary meaning. Otherwise, 10Tales maintains that the Court should construe this term as 10Tales proposes.

### 4.    "presenting to the user via a [/the] display server"

TikTok's proposed construction is internally inconsistent. Either there is no dispute as to how a POSITA would have understood this claim term at the time of the invention, or that same POSITA would not have understood its scope. TikTok's alternative positions serve only to demonstrate that it has failed to meet its burden of proving that the claim is indefinite. Notably, in its IPR petition, TikTok's expert—once again—had no difficulty applying the plain and ordinary meaning of this limitation. *See* Rubin, ¶¶ 52-55.

The parties agree that this limitation refers to a step of a method carried out by software running on the server. The parties also agree that the act of actually displaying for view images, video, or text, or of playing audio are functions that are carried out by client-side software (e.g., on a user's device). As such, a POSITA would have understood that the verb "presenting" in the context of software running on the server does not mean "displaying" as TikTok contends. *See id.*, ¶¶ 88, 90. Moreover, the term "present" is used consistently in the '030 patent specification to mean transmitting digital media from the server to a client. *See id.*, ¶ 90; '030 patent at 1:56 ("***presented*** as animation ***over the Internet***"); 2:16-17 ("Digital media narrative … ***presented over the Internet***"); 12:8-10 ("the personalized digital media asset is ***presented*** to user 501 ***via the Server 590***").[4]

---

[4]  TikTok's reliance on *Paid Search Engine Tools, LLC v. Yahoo! Inc.*, 2010 WL 1904545, at *8 (E.D. Tex. May 10, 2010) is misplaced. The term at issue in that case was "presenting … on ***a***

With regard to the term "display server," TikTok ignores the state of the art at the time of the invention as well as certain technical terms used throughout the '030 patent specification itself, such as "web server," "server environment," "servlets," "Java Server Pages," and "Macromedia Flash MX movies." *See* '030 patent at 15:62-16:4.  In view of the state of the art at the time—and the technology referenced in the specification—a POSITA would have understood the term "display server" in the context of the '030 patent to mean specialized software running on the server-side in client-server model.  *See* Rubin, ¶¶ 50-55, 81-82, 88.  A POSITA would have understood that this software would run on a hardware server that is part of the claimed system. *Id.*  Accordingly, TikTok has failed to meet its burden of showing that this term is indefinite. Accordingly, if the Court agrees that this limitation refers to a step carried out by software executing on a server, this term should be given its plain and ordinary meaning.  Otherwise, 10Tales maintains that the Court should construe this term as 10Tales proposes.

### 5.    "user social network information"

Once again, TikTok argues that this term is either indefinite or readily understood. Notably, TikTok's IPR expert—once again—had no issues understanding the scope of this limitation.  *See id.*, ¶ 95.  TikTok's inconsistent positions demonstrate that this term is not indefinite, and that it has failed to meet its burden of proving that it is.  A POSITA would have understood the scope of "user social network information" in the context of the '030 patent specification and the state of the art at the time of the invention.  *See* '030 patent at 13:50-62; Rubin, ¶¶ 95-96.  Dr. Bovik fails to consider the state of the art at the time of the invention, and instead, merely parrots TikTok's legal arguments from its brief to put forth purely legal conclusions.  Accordingly, TikTok has failed to meet its burden of showing by clear and

---

***single display screen.***"  *Id.*  Here, the claim limitation recites "presenting … ***via a display server.***"

convincing evidence that this term is indefinite, and it should be given its plain and ordinary meaning.

6.      **"retrieving user social network information from at least one source external to the presented first composite digital media display …"**

TikTok again argues that this claim term is either indefinite, or a POSITA would have understood its scope with reasonable certainty.   And again, its IPR expert had no issues understanding the scope of this limitation, and TikTok did not request that the term be construed in the IPR to add the limitations it suggests here.  *See* Rubin, ¶ 98.  Tellingly, TikTok's proposed alternative construction merely recites the very same words that TikTok contends are indefinite— "retrieving **user social network information** (see term 5) from a source external to … the **presented first composite digital media display** (see term 4)."   Thus, TikTok's "alternative" proposal is really once again an argument that the Court should give the term its plain and ordinary meaning—albeit with an added limitation that is not recited in the claim language.  TikTok's expert does not offer any explanation as to the state of the art at the time of the invention or of any terms of art, but instead, simply concludes that the term is indefinite.  As this Court should give no weight to Dr. Bovik's purely legal conclusion, TikTok has failed to meet its burden of proving that this term is indefinite.  TikTok's IPR expert acknowledges based on the state of the art at the time, that a POSITA would have understood the scope of this limitation.[5]  *See* Rubin, ¶ 98.

TikTok's proposed "alternative" construction simply adds a limitation that is not recited and would require that in addition to being "external to the presented first composite digital media display," the at least one source from which the social network information is retrieved must also

---

[5]  TikTok argues that the '030 patent specification provides only one location for retrieving user attributes.  TT Br. at 16.  Not so.  Figures 5A and 5B describe obtaining social network information from, e.g., an Online Community (521), and a Group and Social Dynamics database (518). TikTok's proposed construction confirms that a "stored user profile" is external to the presented "first composite digital media display."

be "external to the stored user profile."  TikTok argues that 10Tales somehow agreed to narrow

the scope of this claim during prosecution.  As explained in § III, *supra*, however, TikTok has

failed to meet its burden to show that the patentee disclaimed any claim scope.  TikTok's proposed

construction is once again inconsistent with its IPR petition, in which it did not seek construction

of this term.  *See id.*  That TikTok itself has interpreted the prosecution history differently in two

proceedings shows that there has been no clear and unmistakable disclaimer.  *MIT*, 839 F.3d at

1119.  Accordingly, this Court should either adopt 10Tales' proposed construction, or conclude

that no construction is necessary and give this term its plain and ordinary meaning.

### 7. "monitoring the first composite digital media display for the presence of a trigger"

10Tales' and TikTok's experts agree that this limitation refers to a step carried out by

software running on a server.  The primary dispute is that TikTok is seeking to add limitations to

this claim term based on TikTok's argument that 10Tales disavowed claim scope during

prosecution.  As explained in § III, *supra*, however, TikTok has failed to meet its burden to show

that the patentee disclaimed any claimed subject matter.  TikTok's proposed construction here is

also inconsistent with its IPR petition, in which it did not seek construction of this term.  *See* Rubin,

¶ 114.  That TikTok itself has interpreted the prosecution history differently in two proceedings

shows that there has been no clear and unmistakable disclaimer.  *MIT*, 839 F.3d at 1119.

Accordingly, if the Court agrees that this limitation refers to a step carried out by software

executing on a server, this term should be given its plain and ordinary meaning.  Otherwise,

10Tales maintains that the Court should construe this term as 10Tales proposes.

### 8. "performing rule based substitution of one or more of the digital media assets from the first set of digital media assets with one or more of the digital media assets from the second set of digital media assets"

TikTok argues that this claim term is either indefinite, or a POSITA would have understood

its scope.  TikTok's IPR expert voiced no concern with understanding the scope of this limitation, nor did TikTok propose a construction for the term.  *See* Rubin, ¶ 101.  TikTok's expert offers only legal conclusions and fails to explain the state of the art or to explain terms of art that would help the Court reach its own legal conclusions.  Moreover, TikTok's expert does not have any difficulty in understanding the scope of a "a rule-based substitution."  Rather, Bovik opines that the specification fails to enable one of ordinary skill to practice the claimed invention.  *See* Bovik ¶¶ 142-143.  But enablement is not before the Court at this time.  Moreover, Bovik fails to back up his conclusion with any explanation of the state of the art at the time of the patent.  Notably, TikTok's IPR expert opines that "rule-based" substitutes would have been well-known to a POSITA at the time of the invention.  *See* Rubin, ¶ 101.  Dr. Rubin agrees, and further opines that to the extent necessary, the term "rule-based" was a term of art in computer programming at the time referring simply to a series of conditional logic.  *See id.*, ¶¶ 100-02.  Accordingly, TikTok has failed to prove that this claim term is indefinite.

TikTok's proposed "alternative" construction simply adds narrowing limitations that are not recited in the claim.  TikTok again argues that 10Tales somehow narrowed the scope of this claim during prosecution.  As explained in § III, *supra*, however, TikTok has failed to meet its burden to show that the patentee disclaimed any claimed subject matter.  Moreover, TikTok's proposed construction is once again inconsistent with its IPR petition, in which it did not seek construction of this term.  *See id.*, ¶ 101.  That TikTok itself has interpreted the prosecution history differently in two proceedings shows that there has been no clear and unmistakable disclaimer.  *MIT*, 839 F.3d at 1119.

Finally, TikTok argues that the term "substitute" is not broad enough to encompass "including" one or more digital media assets into the composite digital media display, but that it

must also require *replacing* other digital media assets.  This is inconsistent with the position that TikTok has taken in the IPR proceedings, where TikTok argues that prior art that teaches "imposing" images into a composite digital media display (without any requirement of replacing) teaches this substitution step.  *See* Almeroth IPR Decl., ¶ 155.  Furthermore, during prosecution, the examiner found that the method disclosed in Srinivasan (stopping the main stream, transmitting the ad stream, and then resuming the main stream) taught this substituting step as well.

> 9.     **"second composite digital media display"**

TikTok's argument here is that a POSITA—a person that all experts agree would have at least a four-year college degree—would not have been able to understand whether the modifier "second" refers to either the "***first*** composite digital medial display," or to the second reference to a ("user specific") composite digital media display in the claim.  TikTok's argument shows that its indefiniteness positions are baseless.  Bovik's declaration ignores the fact that the system would have no utility if the system were to continue presenting the first composite digital media display rather than the user-specific digital media display after performing the substitution step.  *See* Rubin, ¶ 103.  Regardless, TikTok has failed to prove that this term is indefinite.

TikTok's proposed "alternative" construction adds limitations that are not recited in the claim.  TikTok argues that 10Tales intentionally narrowed the scope of this claim term during prosecution.  As explained in § III, *supra*, however, TikTok has failed to meet its burden to show that the patentee disclaimed any claimed subject matter.  TikTok's proposed construction is once again inconsistent with its IPR petition, in which it did not seek construction of this term.  *See id.* That TikTok itself has interpreted the prosecution history differently in two proceedings shows that there has been no disclaimer.  *MIT*, 839 F.3d at 1119.

Dated:  May 7, 2021

Respectfully submitted,

By:  */s/ William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@bdavisfirm.com
Rudolph (Rudy) Fink, IV
Texas State Bar No. 24082997
THE DAVIS FIRM, PC
213 N. Fredonia Street, Suite 230
Longview, Texas  75601
Telephone:  (903) 230-9090
Facsimile:  (903) 230-9661

Barry P. Golob (admitted *pro hac vice*)
bgolob@cozen.com
Thomas J. Fisher (admitted *pro hac vice*)
tfisher@cozen.com
Eric Levi
elevi@cozen.com (admitted *pro hac vice*)
COZEN O'CONNOR
1200 Nineteenth Street, NW
Washington, D.C.  20036
Telephone:  (202) 912-4800
Facsimile:  (202) 861-1905

Samuel A. Lewis (admitted *pro hac vice*)
slewis@cozen.com
David M. Stahl (admitted *pro hac vice*)
dstahl@cozen.com
COZEN O'CONNOR
200 South Biscayne Boulevard, 30th Floor
Miami, Florida 33131
Telephone:  (305) 704-5940
Facsimile:  (305) 704-5955

*Attorneys for Plaintiff 10Tales Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(A) on May 7, 2021, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service.   Local Rule CV-5(b)(1).

*/s/ William E. Davis, III*
William E. Davis, III

17